UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN DELMONICO,<br><br>             Plaintiff,<br><br>v.<br><br>RALPH LAUREN CORPORATION,<br><br>             Defendant. | Case No.   22-Civ-10977<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Susan Delmonico, by and through her attorneys at Filosa Graff LLP, as and for her Complaint in this action against Defendant Ralph Lauren Corporation ("Ralph Lauren," "Defendant," or the "Company") alleges upon personal knowledge and upon information and belief as to other matters as follows:

**PRELIMINARY STATEMENT**

1. This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices against Plaintiff, including its unlawful interference with, restraint, and/or denial of Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA") and/or retaliation for exercising rights protected by the FMLA, as well as Defendant's retaliation against Plaintiff for exercising rights protected by the New York City Human Rights Law ("NYCHRL") and/or opposing Defendant's violation of the NYCHRL, in violation of the NYCHRL and New York Labor Law ("NYLL").

2. Specifically, Defendant violated the FMLA by failing to reinstate Plaintiff to the same position or a substantially equivalent position following her return from a FMLA-

1

designated leave of absence. Further, after Plaintiff raised concerns about Defendant's violation of the FMLA, Plaintiff was subjected to retaliation by employees of Defendant.

3. Defendant violated the NYCHRL by retaliating against Plaintiff for exercising rights protected by the NYCHRL, which include requesting (and taking) a leave of absence as an accommodation for Plaintiff's disability and objecting to such retaliation by Defendant.

4. Defendant violated the NYLL by retaliating against Plaintiff for objecting to Defendant's retaliation against Plaintiff because she took a leave of absence as an accommodation for her disability.

5. Defendant's unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district

## PARTIES

8. Plaintiff Susan Delmonico is a current employee of Ralph Lauren Corporation and resides in Kings County, New York. Plaintiff has been employed by Ralph Lauren since

August 2012. At all relevant times, Plaintiff met the definition of "employee" under all applicable statutes.

9. Defendant Ralph Lauren Corporation is a foreign business corporation organized and existing under the laws of the State of Delaware with a principal place of business at 650 Madison Avenue, New York, NY 10022. At all relevant times, Ralph Lauren met the definition of "employer" or a "covered employer" under all applicable statutes.

## ADMINISTRATIVE REQUIREMENTS

10. Plaintiff also intends to file a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act ("ADA").

11. When the EEOC completes its investigation of the charge and issues Plaintiff a notice of right to sue, Plaintiff will seek leave to amend this Complaint to add claims that Defendant violated the ADA as well.

12. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

13. The Company hired Ms. Delmonico in August 2012 as a Senior Designer for the Company's Lauren brand. Shortly thereafter, Ms. Delmonico was promoted to Design Director.

14. This was Ms. Delmonico's second stint with the Company, having previously been employed by the Company's as a Senior Designer for the Company's golf and tennis brands.

15. Since 2020, Ms. Delmonico has been assigned to work from Defendant's office located at 601 West 26th Street, New York, NY 10016. Ms. Delmonico also worked from multiple other Ralph Lauren locations in Manhattan during the course of her employment.

16. As of June 2022, Ms. Delmonico was serving as Design Lead for Structured Wovens Design, one of four Design Leads reporting to Toby Weaver, the Company's Creative Director of Design.

17. Ms. Delmonico has been reporting to Mr. Weaver since 2016.

18. As of June 2022, Ms. Delmonico had two direct reports (though one position had been open since January 2022 when one of the designers reporting to Ms. Delmonico had resigned) and had responsibility over the following product categories:

   a. Tailored Wovens:  This category includes tailored jackets, blazers, pants, shorts, skirts, dresses, shirts, and all haberdashery products;

   b. Leather & Suede: This category included leather and suede jackets, blazers, pants, shorts, skirts, and dresses;

   c. Core Products: This included categories that fall under several Structured Woven styles (such as Tailored Wovens, Outerwear, Haberdashery, Casual and Denim) that are repeated seasonally;

   d. Outerwear: This category included everything from transitional outerwear to down-filled cold weather outerwear;

   e. Casual Products: Depending on the fabrication, this category included chinos, shorts, skirts, cargos, soft cotton shirts and soft cotton dresses; and

   f. Denim Products: This category included denim jackets, jeans, shorts, skirts, dresses & shirts.

19. Throughout his tenure as Creative Director, Mr. Weaver has subjected Ms. Delmonico to a toxic work environment, constantly subjecting Ms. Delmonico to microaggressions, gaslighting, intentional lack of communication (i.e., "ghosting"), bullying, and harassment in the workplace. The following are a few examples of this treatment.

   a. Mr. Weaver consistently belittled and ridiculed Ms. Delmonico in public meetings, such as in an April 2022 meeting when Mr. Weaver waived his hands

at Ms. Delmonico while saying "bye, bye" to indicate that Ms. Delmonico would be fired if she did not deliver on a specific product and fabrication.

b. Mr. Weaver engaged in continuous microaggressions designed to erode Ms. Delmonico's identity and self-worth, such as by excluding Ms. Delmonico from conversations with Ms. Delmonico's peers and direct reports with the intent to undermine Ms. Delmonico's standing with her subordinates, peers, and managers.

c. Mr. Weaver ignored and failed to communicate with Ms. Delmonico for extended periods of time, despite her repeated requests for meetings, effectively "ghosting" her in the workplace which made it incredibly difficult for Ms. Delmonico to do her job. For example, from April 7, 2022 through June 5, 2022, Ms. Delmonico did not have a single meeting with Mr. Weaver, whether in-person, virtual or over the phone, despite her repeated requests for guidance.

d. Mr. Weaver ignored Ms. Delmonico's requests for additional resources given that her workload, as measured by the number of styles she was responsible for, far exceeded that of her peers, which led Ms. Delmonico to believe that Mr. Weaver was deliberately assigning her more work with less resources in order to set her up to fail, in stark contrast to the favoritism that Mr. Weaver exhibited towards Emmy Bunn, a close friend of his that he hired in September 2020. To illustrate the point, for the most recent season before Ms. Delmonico went out on FMLA leave, Ms. Bunn was responsible for 69 styles and had three direct reports supporting her, while Ms. Delmonico had 183 styles and only one direct report supporting her (with one open to hire position).

20. While Ms. Delmonico had been able to tolerate Mr. Weaver's abuse for a long time, Mr. Weaver's abusive treatment of Ms. Delmonico intensified during the pandemic, especially with the hiring of Ms. Bunn, a close friend of Mr. Weaver, as one of the four Design Leads reporting to him.

**Plaintiff's FMLA Leave and Complaint to Human Resources**

21. Mr. Weaver's mistreatment of Ms. Delmonico led her to seek medical treatment as a result of the effects that this treatment was having on her physical and mental well-being.

22. In June 2022, Ms. Delmonico's doctor strongly recommended that she go out on a medical leave of absence to receive more intensive treatment for her medical condition.

23. The immediate and proximate cause of Ms. Delmonico's leave of absence was a performance review meeting that she had with Mr. Weaver on June 6, 2022 where Mr. Weaver subjected Ms. Delmonico to unwarranted and baseless criticisms of her performance – including references to inaccurate comments attributed to a direct report of Ms. Delmonico that had resigned earlier that year. These criticisms stand in stark contrast to Ms. Delmonico's actual performance and work ethic, which included routinely working late nights and weekends to make up for the lack of resources given to her, relative to all of her Design Director peers. Mr. Weaver criticized Ms. Delmonico for a "lack of leadership" and claimed that Ms. Delmonico was not able to step up from design to a leadership role, yet Mr. Weaver knew this was baseless criticism since Ms. Delmonico's workload was dramatically higher relative to her peers.

24. This performance review had the effect of denying Ms. Delmonico a merit salary increase and led Ms. Delmonico to believe that Mr. Weaver was trying to force her to quit so that he could assign her product categories to Ms. Bunn.

25. Around this same time, Ms. Delmonico's doctor diagnosed her as suffering from major depressive disorder.

26. Ms. Delmonico followed her doctor's recommendation and requested an FMLA-designated leave of absence from July 1, 2022 through September 15, 2022, which the Company approved.

27. Ms. Delmonico subsequently extended this leave through September 23, 2022 to cover the full twelve (12) weeks permitted under the FMLA.

28. At the time that she went out on leave, Ms. Delmonico also filed a formal complaint with the Company's human resources department about Mr. Weaver's abusive treatment of her.

**Ms. Delmonico's Return from FMLA Leave**

29. In early September, prior to her return from FMLA leave, Ms. Delmonico had a phone conversation with Gabriela Calderon, a People Business Partner with the Company's human resources department, where Ms. Calderon notified Ms. Delmonico of several changes that had been made while Ms. Delmonico was out on FMLA leave and would continue upon her return from FMLA leave.

30. Specifically, Ms. Calderon notified Ms. Delmonico that her only direct report (Kelsey Krekeler), who had been reporting to Ms. Bunn while Ms. Delmonico was out on leave, would continue reporting to Ms. Bunn after Ms. Delmonico's return from leave. Ms. Calderon also notified Ms. Delmonico that the Tailored Wovens product category that Ms. Krekeler had been working on while reporting to Ms. Delmonico would remain with Ms. Bunn following Ms. Delmonico's return from FMLA leave.

31. According to Ms. Calderon, these changes would result in "more balance of a workload" for Ms. Delmonico upon her return from leave.

32. As a result of these changes, Ms. Delmonico now has no direct reports, other than an unfilled Designer position, and responsibility for significantly less product categories than before she went out on FMLA leave.

33. Prior to her return from FMLA leave, Ms. Delmonico also spoke with Tonya Drayton, from the Company's Global People Practices department, about her complaint about Mr. Weaver.

34. Ms. Drayton notified Ms. Delmonico that the Company's investigation confirmed that Mr. Weaver had created an "unproductive work environment" and claimed that the Company had taken "appropriate action," but she refused to explain what that "appropriate action" was or how it would protect Ms. Delmonico in the future, especially given that Ms. Drayton also confirmed that, upon her return from FMLA leave, she would continue reporting to Mr. Weaver.

35. While continuing to report to Mr. Weaver was obviously a concern for Ms. Delmonico, she was more concerned to learn that the position that she would return to was fundamentally different from the position that she left when she went out on FMLA leave.

36. Ms. Delmonico raised her concerns about these changes to Ms. Calderon and Ms. Drayton. In doing so, Ms. Delmonico specifically raised concerns that the Company had violated the FMLA by failing to return her to the same or an equivalent position upon her return from a FMLA-designated leave of absence.

37. Ms. Delmonico's complaints to Ms. Calderon and Ms. Drayton also qualify as protected activity under the NYCHRL and NYLL because she was opposing conduct that was unlawful under the NYCHRL.

38. While Ms. Delmonico was prepared to return to work on September 26, 2022, the Company requested that Ms. Delmonico stay out on paid leave in lieu of returning to work on September 26, 2022.

39. The Company continued this paid leave through November 4, 2022 and Ms. Delmonico returned to work on November 7, 2022.

40. Following her return from FMLA leave, Ms. Delmonico's job has changed in the following ways: (i) the Company reassigned the Tailored Wovens product category from Ms. Delmonico to Ms. Bunn, which has significantly reduced Ms. Delmonico's role and responsibilities, as evidenced by the fact that she is currently responsible for significantly less styles upon her return from leave; (ii) the Company reduced Ms. Delmonico's number of direct reports from two (2) to one (1) – and the one direct report is an open position that is not currently filled – so that Ms. Delmonico has no one to assist her with the product categories assigned to her, other than two freelance employees approved through the end of January 2023 (in contrast, Ms. Bunn now has four (4) permanent employee direct reports).

41. Since being notified of these changes to her job, Ms. Delmonico raised concerns about the Company's violation of her rights under the FMLA, including in phone conversations with human resources and virtual and in-person meetings with her managers.

42. In response to her concerns, Ms. Delmonico has received conflicting information from her managers and human resources about who made the decision to have Ms. Krekeler report to Ms. Bunn. While Mr. Weaver and his manager, Lauren Flusser (Global Brand

President), have claimed that it was the Company's human resources department that made the decision, Ms. Calderon subsequently claimed that it was Mr. Weaver and Ms. Flusser that made the decision.

43. Ms. Delmonico has been subjected to repeated acts of retaliation because she both (i) exercised her right to take an FMLA-protected leave of absence and (ii) objected to the Company's violation of the FMLA when it failed to return her to her same position or an equivalent position upon her return from FMLA leave.

44. This retaliation has manifested itself in a number of ways, including the following:

    a. The removal of the Tailored Wovens product category and refusal to reassign this product category to Ms. Delmonico upon her return from FMLA leave.

    b. The removal of one of Ms. Delmonico's direct reports upon her return from FMLA leave and failure to assign her additional headcount to the extent that, upon her return from FMLA leave, she now has zero direct reports when the normal practice is for each Design Lead to have two direct reports.

45. Since her return from FMLA leave and protected complaints of retaliation, Ms. Flusser has not reached out to Ms. Delmonico for a skip-level meeting to discuss her concerns about Mr. Weaver's treatment without him present. Skip-level meetings are common at Ralph Lauren and typically involve a meeting between an employee and their direct supervisor's manager. Ms. Flusser has denied this opportunity to Ms. Delmonico and, as a result, has never attempted to hear or understand Ms. Delmonico's concerns directly from her without Mr. Weaver present. This is in stark contrast to how the Company responded to concerns raised by

other employees, such as Ms. Krekeler, who met with Mr. Weaver on multiple occasions, without Ms. Delmonico present, to discuss her concerns about reporting to Ms. Delmonico.

46. Rather than address Ms. Delmonico's concerns, the Company has continued to escalate its retaliation against her for her protected complaints of unlawful treatment.

47. For example, on December 20, 2022, Ms. Flusser scheduled a call with Ms. Delmonico and Ms. Calderon for the following day (December 21, 2022). During this call, Ms. Flusser claimed that "multiple team members" had voiced complaints about Ms. Delmonico's demeanor at work and accused Ms. Delmonico of displaying "disrespectful behavior" and bullying other team members since her return from leave.

48. According to Ms. Flusser, the purpose of this call was to put Ms. Delmonico "on notice" that if her behavior did not improve in the new year, there would be serious consequences, presumably a reference to terminating Ms. Delmonico's employment.

49. While the tone of the call was serious and threatening, when Ms. Delmonico repeatedly requested specific examples of the alleged conduct so that she could understand the concerns and try to address the behavior, Ms. Flusser and Ms. Calderon were unable to provide any specific examples beyond a reference to a single phone call where Ms. Delmonico requested that a colleague with questions about one of her former product categories to direct their questions to the design lead responsible for that product category; this obviously makes sense since Ms. Delmonico was no longer responsible for this product category.

50. Instead of providing specifics to support these serious allegations, Ms. Flusser cited vague and subjective "sentiments," "observations," and "perceptions" expressed by Ms. Delmonico's co-workers, such as Ms. Delmonico's "body language" when entering a room and her "tone" when speaking in the office.

51.     The Company's treatment of Ms. Delmonico in response to these alleged "concerns" raised by co-workers stands in stark contrast to the Company's lack of action when Ms. Delmonico complained about hostile and abusive treatment by Mr. Weaver that pales in comparison to these subjective and baseless criticisms of Ms. Delmonico's "demeanor" following her return from FMLA leave. When Ms. Delmonico raised this dichotomy, Ms. Calderon refused to discuss Ms. Delmonico's concerns that pre-dated her leave.

52.     It is clear that the purpose of Defendant's conduct in this December 21, 2022 phone call was to create a false narrative and lay the groundwork for further retaliation, including the termination of Ms. Delmonico's employment with Ralph Lauren.

## FIRST CAUSE OF ACTION
### (Interference with Plaintiff's Rights under the FMLA)

53.     Plaintiff hereby repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

54.     At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA.

55.     At all relevant times, the Defendant was and is a "covered employer" within the meaning of the FMLA. Specifically, the Company has employed more than 50 employees over the course of both the prior and current calendar years.

56.     Defendant violated the FMLA by unlawfully interfering with, restraining, and/or denying the exercises of Plaintiff's FMLA rights by, *inter alia*, failing to return Plaintiff to the same or equivalent position following her return from a FMLA-designated leave of absence.

57.     As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

58. Defendant's unlawful action constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## SECOND CAUSE OF ACTION
**(Retaliation for Exercising Rights Protected by the FMLA)**

59. Plaintiff hereby repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

60. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA.

61. At all relevant times, the Defendant was and is a "covered employer" within the meaning of the FMLA. Specifically, the Company has employed more than 50 employees over the course of both the prior and current calendar years.

62. Plaintiff engaged in the following activities that are protected under the FMLA: (i) taking a FMLA-designated leave of absence from July 1, 2022 through September 23, 2022; and (ii) objecting to Defendant's violation of the FMLA by failing to return her to the same or an equivalent position upon her return from FMLA leave.

63. Defendant retaliated against Plaintiff for engaging in activities by protected by the FMLA by, among other things, (i) removing Plaintiff's direct report and reassigning her to another Design Lead, and (ii) reassigning many of Plaintiff's key job responsibilities to another Design Lead.

64. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

65. Defendant's unlawful action constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL )

66. Plaintiff hereby repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

67. At all relevant times, Plaintiff was an "employee" within the meaning of the NYCHRL.

68. At all relevant times, Defendant met the definition of an "employer" within the meaning of the NYCHRL.

69. Plaintiff engaged in the following activities that are protected under the NYCHRL: (i) taking a FMLA-designated leave of absence from July 1, 2022 through September 23, 2022 as an accommodation for a mental health condition that qualifies as a disability under the NYCHRL; and (ii) objecting to Defendant's retaliation against her for taking a medical level of absence as a result of her disability.

70. Defendant retaliated against Plaintiff for engaging in activities by protected by the NYCHRL by, among other things, (i) removing Plaintiff's direct report and reassigning her to another Design Lead and failing to assign Plaintiff additional headcount, and (ii) reassigning many of Plaintiff's key job responsibilities to another Design Lead and failing to return them upon Plaintiff's return from FMLA leave.

71. As a direct and proximate result of the Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of damages.

72. As a direct and proximate result of the Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish

and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of damages.

73. Defendant's unlawful retaliatory conduct constitutes malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of NYLL § 740 )**

74. Plaintiff hereby repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

75. At all relevant times, Plaintiff was an "employee" within the meaning of the NYLL § 740(1)(a).

76. At all relevant times, Defendant met the definition of an "employer" within the meaning of NYLL § 740(1)(b).

77. Plaintiff engaged in protected activity under NYLL § 740 when she objected to Defendant's retaliation against her for taking an FMLA-designated leave of absence to receive treatment for her disability.

78. Defendant retaliated against Plaintiff for engaging this protected activity by, among other things, (i) removing Plaintiff's direct report and reassigning her to another Design Lead and failing to assign Plaintiff additional headcount, and (ii) reassigning many of Plaintiff's key job responsibilities to another Design Lead and failing to return them upon Plaintiff's return from FMLA leave.

79. As a direct and proximate result of the Defendant's unlawful retaliatory conduct in violation of NYLL § 740, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of damages.

80. Defendant's unlawful retaliatory conduct constitutes malicious, willful and/or wanton violations of NYLL § 740 for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, the State of New York and the City of New York;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not

limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

  E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

  F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

  G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

  H. An award of punitive damages;

  I. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

  J. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 30, 2022

                                      FILOSA GRAFF LLP

By: _____
                                      Gregory N. Filosa (GF-5680)
                                      Ari Y. Graff (AG-8039)

                                      111 John Street, Suite 2510
                                      New York, NY  10038
                                      Tel:  (212) 256-1780
                                      Fax: (212) 156-1781
                                      gfilosa@filosagraff.com
                                      agraff@filosagraff.com

                                      COUNSEL FOR PLAINTIFF